STATE OF MINNESOTA            DISTRICT COURT

COUNTY OF HENNEPIN          FOURTH JUDICIAL DISTRICT

Court File No.: _____

Haiphong Le,

       Plaintiff,

vs.                                          SUMMONS

Delta Air Lines, Inc.,

       Defendants.

**THIS SUMMONS IS DIRECTED TO DEFENDANT DELTA AIR LINES, INC:**

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

    HALUNEN & ASSOCIATES
    1650 IDS Center
    80 South Eighth Street
    Minneapolis, MN 55402
    Telephone: (612) 605-4098

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

SCANNED
DEC 1 2 2011
U.S. DISTRICT COURT MPLS

**EXHIBIT A**

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer with 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to context the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated this 23rd day of November, 2011        HALUNEN & ASSOCIATES

                                              Clayton D. Halunen, # 219721
                                              1650 IDS Center
                                              80 South Eighth Street
                                              Minneapolis, MN 55402
                                              Telephone: (612) 605-4098
                                              Facsimile: (612) 605-4099

                                              *ATTORNEYS FOR PLAINTIFF*

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Court File No.: _____

Haiphong Le,

    Plaintiff,

v.

**COMPLAINT AND JURY DEMAND**

Delta Air Lines, Inc.

    Defendant.

---

The Plaintiff, Haiphong Le ("Plaintiff"), for his Complaint against Delta Air Lines, Inc. ("Defendant") states and alleges as follows:

## INTRODUCTION

1. Plaintiff Haiphong Le, an individual of Vietnamese descent, was a baggage handler for Defendant at the Minneapolis – St. Paul International Airport ("MSP"). He had an exemplary employment record and a reputation for being honest and hard worker. In January of 2011, Plaintiff purchased a used iPhone from a coworker. The coworker told Plaintiff that he was upgrading to a newer phone. Unbeknownst to Plaintiff, his coworker found the cell phone in a baggage area and then passed it off to Plaintiff as his own. The phone was located by the police through its global positioning system ("GPS") and Plaintiff was arrested and charged with misdemeanor theft. Plaintiff made it known to Defendant that he did not know the phone was stolen. Nonetheless, Defendant fired Plaintiff without any reasonable investigation.

1

2. Plaintiff claims that he was terminated because of his race and national origin and that the circumstances surrounding his termination resulted in defamation. He seeks all available legal remedies available at law for his injuries.

## PARTIES

3. Plaintiff is an individual of Vietnamese descent born in Vietnam. He resides in the City of St. Paul, County of Ramsey, State of Minnesota.

4. Defendant, is headquartered in Atlanta, Georgia and conducts significant business in the State of Minnesota.

5. At all times relevant to this lawsuit, Plaintiff and Defendant were "employee" and "employer," respectively, as those terms are defined in Minn. Stat. §363A.03.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked as the facts surrounding this case occurred in the State of Minnesota and involve violations of state law.

7. Venue is appropriate because Defendant transacts a substantial amount of business in the State of Minnesota and a substantial amount of the facts giving rise to this action occurred in this State.

## FACTS

8. Plaintiff worked for Defendant from May 11, 1998 until he was terminated on February 11, 2011.

9. On January 14, 2011, Plaintiff received a phone call from a customer service agent, Steven Cruz. Cruz heard that Plaintiff bought used cell-phones and was specifically in the market for an iPhone. Plaintiff met with Cruz at approximately

11:30 a.m. that day. He asked Cruz why he was selling the phone and how much he wanted for it. Cruz said he wanted to upgrade from an iPhone 4 16GB to the 32GB model and that he wanted $400 for it. Plaintiff offered $380, and Cruz agreed. Plaintiff had no reason to and did not believe the iPhone was stolen. Among other things, Plaintiff is well aware of the GPS tracking device built into the iPhone.

10. However, unbeknownst to Plaintiff, Cruz had found the iPhone in the baggage claim area at MSP. Instead of turning the phone over to the lost-and-found or the appropriate authorities, Cruz claimed it as his own. That same day, the phone's owner, Kristi Brown, reported to Airport Police that her iPhone had been stolen the previous night. Brown's son was able to track the device to 480 Aurora Avenue in St. Paul by using an application that tracks the device online through its internal GPS. He sent the police an email that contained a map that showed the iPhone's location. Police later determined the phone was actually at 470 Aurora Avenue, Plaintiff's residence.

11. Police obtained a search warrant for Plaintiff's residence and executed the search on January 21, 2011. After arriving at the residence, police found Plaintiff and asked him to retrieve the iPhone. Plaintiff peacefully complied and explained the situation to officers. He then voluntarily accompanied officers to their Operations Center where he answered additional questions.

12. The iPhone was returned to Brown on January 24, 2011.

13. After it became known that he was allegedly involved in this incident, Plaintiff was told to contact Bill White, Air Customer Service Corporate Director – MSP,

3

because Bobby Johnson Jr., General Manager – Air Customer Service - MSP, was out on business. On White's advice, Plaintiff prepared and submitted a written statement dated January 29, 2011, in which he explained that he had no knowledge the iPhone was stolen. White told Plaintiff that Johnson would call him on February 8, 2011. Johnson did not call. Plaintiff called and left him a voicemail that day.

14. On February 10, 2011, Johnson returned Plaintiff's call and said that after reviewing the police report, Plaintiff's statements, and information from their Question and Answer session, he decided to terminate Plaintiff's employment.

15. In an internal memorandum, Johnson stated to White that he decided to terminate Plaintiff's employment because he was "clearly advised of the need for improvement, but failed to do so." However, Plaintiff's work record reveals only a few minor violations in the entire duration of his employment. Plaintiff also had perfect attendance for the last five years and no criminal record.

16. In his February 11, 2011 letter terminating Plaintiff, Johnson stated the reason for termination: "A customer's phone was reported as missing on 1/13/2011, which was subsequently found in your home. This violation in conduct establishes just-cause for your termination."

17. Plaintiff was advised of his right to appeal Defendant's decision through Delta's internal procedures. Plaintiff did so and submitted his appeal to the Director of Human Resources at Defendant's Equal Opportunity and Compliance offices in Atlanta, GA on February 16, 2011. In his appeal, he fully apprised the office of

the circumstances surrounding his termination. On March 24, 2011, he received notice that his appeal was reviewed and denied.

18. Defendant fired Cruz after he admitted in a police interview on February 22, 2011, that "he picked the phone up off the floor and place it in his pocket." He further said that he contacted Plaintiff and asked him if he wanted to buy the iPhone, which he did. Cruz fully corroborated Plaintiff's story and admitted to the theft, for which he was subsequently charged. This report was entered on February 25, 2011 and was available to Defendant at the time of Plaintiff's first appeal and renewed appeal. Despite this, the decision to terminate Plaintiff was upheld.

19. On April 26, 2011, Plaintiff renewed his appeal through a letter from his then-attorney Margret M. Murphy. That letter included a petition from many of Plaintiff's co-workers seeking his reinstatement and other communications that attested to Plaintiff's honesty.

20. On May 13, 2011, the prosecuting attorney in a letter dated May 10, 2011 dismissed Plaintiff's misdemeanor theft charge.

21. Defendant, again through their Equal Opportunity and Compliance office, reconsidered and denied Plaintiff's renewed appeal. They notified him of this on June 15, 2011.

22. Plaintiff also appealed an ineligibility determination for unemployment benefits with the Minnesota Department of Employment and Economic Development. On August 4, 2008, and following a hearing, that agency found that Plaintiff's conduct did not constitute employment misconduct and determined he was

eligible for unemployment benefits. Specifically, the Unemployment Law Judge noted that Plaintiff provided credible testimony and a plausible sequence of events, supported by extensive documentation. The Order said Plaintiff did not violate Defendant's reasonable expectations or display a substantial lack of concern for his employment.

23. Throughout this ordeal, Plaintiff received support from his co-workers. Approximately 170 coworkers signed a petition with their employee numbers requesting the reinstatement of Plaintiff. Three co-workers wrote letters, which detailed his high moral character, excellent work ethic, and corroborated the facts of his explanation surrounding the stolen iPhone. In fact, Plaintiff's file contained a letter from a Delta customer whose phone he had found and shipped back to her just a few months earlier. She wrote: "Thank you so much for hiring employees, such as Mr. Haiphong [Plaintiff] who are honest and who go above and beyond what I would expect of the average Airline Industry employee."

24. Plaintiff is aware of at least two incidents where Caucasian employees, were allowed to return to work after they engaged in actual criminal conduct.

25. One employee stole from an airport vendor while on duty. This incident was captured on a terminal security camera. After his initial termination, the employee appealed his termination per Defendant's internal procedures. His appeal was granted and he was allowed to return to work.

26. Another employee assaulted and bloodied a co-worker. He too was initially terminated and appealed the decision. His appeal was also granted and he was allowed to return to work.

27. On October 30, 2011 and November 4, 2011, Plaintiff applied for baggage handler positions with United Air Lines and Continental Air Lines, respectively. In both applications, he was forced to explain the reason he was terminated from previous position at Defendant and thus had to repeat the false theft accusation. To date, Plaintiff has not been contacted by either company. He anticipates having to provide similar information to other potential employers.

28. As a result of Defendant's illegal conduct, Plaintiff has suffered from distress, humiliation and embarrassment, loss of reputation, loss of enjoyment in life, loss of wages and benefits, and has incurred attorneys' fees and other expenses.

## CLAIMS

### COUNT ONE
### RACE AND NATIONAL ORIGIN DISCRIMINATION
### IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff re-alleges each and every paragraph of this Complaint.

29. Defendant, through its managers and officials acting on its behalf and within the scope of their employment, engaged in unlawful race and national origin discrimination against Plaintiff in violation of, Minn. Stat. §§ 363A.01 *et seq.* by subjecting him to adverse, differential and discriminatory treatment because of his race and national origin.

30. Defendant's discrimination against Plaintiff included but is not limited to: his discriminatory termination and Defendant's failure to rehire. Plaintiff was exonerated after Cruz admitted to the theft, but Defendant still upheld his termination and failed to reinstate him. Additionally, Defendant provided pretextual reasons for Plaintiff's termination. Other similarly situated Caucasian

employees who actually engaged in criminal conduct were treated more favorably than Plaintiff, and were reinstated to their positions.

31. Defendant failed to take all reasonable steps to prevent discrimination against Plaintiff from occurring.

32. The actions of Defendant adversely affected the terms, conditions and privileges of Plaintiff's employment, by his unjust termination and failure to be reinstated.

33. Plaintiff's race and national origin were the motivating factors behind Defendant's decision to terminate and not reinstate.

34. The effect of the practices above deprived Plaintiff of equal employment opportunities and otherwise adversely affected his status as an employee because of his race and national origin.

35. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits and other damages.

## COUNT TWO
## DEFAMATION

Plaintiff re-alleges each and every paragraph of this Complaint.

36. Defendant engaged in unlawful defamation of Plaintiff through forced compelled republication.

37. Defendant falsely stated that the presence of a customer's phone in Plaintiff's home was a "violation in conduct" that "establishes just-cause for your

termination." This statement was false because Plaintiff did not engage in any "violation in conduct" that would constitute just cause for his termination.

38. Defendant is not entitled to the qualified privilege usually available to employers regarding circumstances surrounding an employee's termination. Defendant failed to thoroughly investigate and had no reasonable grounds to believe that Plaintiff in fact engaged in a violation in conduct warranting just-cause termination based solely on the presence of the phone in his home.

39. The failure to investigate and termination for a false reason further constitutes malice and abuse that also undermines any affirmative defense of qualified immunity.

40. In addition, Defendant knew that Plaintiff would be compelled to disclose the false, defamatory statements about his termination to potential employers, which has occurred.

41. As a direct and proximate result of Defendant's conduct, Plaintiff suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of Defendant complained of herein be adjudged decreed, and declared to be a violation of the rights secured to Plaintiff by the Minnesota Human Rights Act and common law.

9

b. That Defendant be required to make Plaintiff whole for their adverse, discriminatory actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c. That Plaintiff be reinstated to his job or, in the alternative, awarded front pay and the monetary value of any employment benefits he would have been entitled to in his position with Defendant.

d. That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

e. That the Court award Plaintiff his attorney's fees, costs, and disbursements pursuant to state law.

f. That Plaintiff be awarded compensatory damages in an amount to be established at trial.

g. That Plaintiff be awarded punitive damages as permitted by statute.

h. That Plaintiff be awarded treble damages as permitted by statute.

i. That the Court grant such other and further relief as it deems fair and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE JURY IS AVAILABLE TO PLAINTIFF.

Dated this 22n day of November, 2011

HALUNEN & ASSOCIATES

_____
Clayton D. Halunen, Atty No. 219721
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099

*Attorney for Plaintiff*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. §549.21 to the party against whom the allegations in this pleading are asserted.

Dated this 22 day of November, 2011.

_____
Clayton D. Halunen

11