UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Haiphong Le,

          Plaintiff,

      v.                                    **MEMORANDUM OPINION AND ORDER**
                                               Civil No. 11-3587 ADM/JSM

Delta Air Lines, Inc.,

          Defendant.

___

Barbara Jean Felt, Esq., Clayton D. Halunen, Esq., and Ross D. Stadheim, Esq., Halunen & Associates, Minneapolis, MN, on behalf of Plaintiff.

Joseph W. Hammell, Esq., and Marilyn J. Clark, Esq., Dorsey & Whitney LLP, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On April 19, 2013, the undersigned United States District Judge heard oral argument on Defendant Delta Air Lines, Inc.'s ("Delta") Motion for Summary Judgment [Docket No. 22]. Plaintiff Haiphong Le ("Le"), a former Delta employee, alleges Delta discriminated against him on the basis of his race and national origin in violation of the Minnesota Human Rights Act (MHRA). For the reasons stated herein, Delta's motion for summary judgment is granted.

## II. BACKGROUND

In May 1998, Le began working for Northwest Airlines, Inc. ("Northwest") as an Equipment Service Employee ("ESE"). Hammell Aff. [Docket No. 26] Ex. DD ("Le Dep.") 34. Le's position was in the Aircraft Customer Service department at the Minneapolis–St. Paul International Airport ("MSP"). Specifically, Le worked in the area referred to as the "bag room," the facility from which travelers' checked luggage is sorted and distributed to airplane concourses. Id. at Ex. GG ("White Dep.") 20. For several years, Le's employment was without

major issues; Le incurred only two minor disciplinary actions for safety and work performance. Id. at Ex. M. Le received regular wage increases and was promoted to Lead ESE in November 2008. Id. at Ex. A; Le Dep. 35. Le's coworkers generally viewed him as a hardworking and well-liked employee. See, e.g., Felt Aff. [Docket No. 34] Exs. 5-6.

In October 2008, the corporate merger of Northwest into Delta was followed by an extended transition period for Northwest employees. As part of the transition, Delta introduced former Northwest employees to its Code of Ethics as well as a policy document named "Rules of the Road." See Hammell Aff. Exs. B, C. Delta's policies required its employees to be honest. Le testified that he knew Delta "expected and required its employees to always tell the truth." Le Dep. 62-63. After the merger, Le worked for Delta for several years without incurring any disciplinary actions.

On January 14, 2011, a Delta passenger called MSP police to report that her iPhone had been stolen while she was waiting for her luggage in the baggage claim area of the airport. Hammell Aff. Ex. D. The passenger used security software to locate her phone and provided the resulting address to MSP police. Id. The police obtained a search warrant for the address. Id.

On January 21, 2011, four MSP police officers arrived at the address, a home where Le resided and which Le's father owned. Id. The search warrant identified the passenger's stolen phone as an "iPhone 4G," but did not specify a color. Id. at Ex. E. The officers asked Le if he possessed such a phone, and Le led them to an office area in his basement where he had several phones he recently purchased, including three iPhones. Id. at Ex. D; Le Dep. 82, 108-09.

Le offers contradictory versions of what happened next. According to the MSP police report, Le's affidavit, and Le's own written statements, Le "immediately" retrieved the stolen

phone for the officers.  See Hammell Aff. Exs. J, O, R.  In contrast, at his deposition, Le stated he was actually unsure which of the three iPhones was the stolen one.  As a result, MSP police had to identify the passenger's stolen phone using its identification number.  Le Dep. 77-78, 82, 340-41.  Due to his confusion, Le testified, he mistakenly told the officers he purchased the stolen phone from a seller on Craigslist, a classified advertisements website.  See id.; Hammell Aff. Ex. D; Pl.'s Opp. Summ. J. [Docket No. 31] ("Pl.'s Opp.") 9.  Regardless of which of his versions is accurate, Le deliberately chose not to identify the seller of the stolen phone or provide the police with any concrete information about how he obtained it.  Hammell Aff. Exs. D, R.

In his deposition, Le explained that he "did not tell the police everything" because he wanted to conduct his own investigation.  Le Dep. 90.  Contrary to what Le told the police, Le now admits he purchased the phone from a fellow employee at Delta, Stephen Cruz, who also worked in Aircraft Customer Service.  See Hammell Aff. Ex. R.  On January 14, 2011, Cruz had called Le and asked if he would be interested in buying an iPhone.  Id.  Le returned Cruz's call to confirm his interest, and then went to Cruz's home.  Id.  Once there, Le purchased two iPhones, one of which was the passenger's stolen phone.  Id.  When questioned by the police, Le "was not completely forthcoming with the details surrounding the possible theft and where [he] obtained the iPhone" because he wanted to confront Cruz.  Id. at Ex. J ¶ 8.  Le explained that he wanted to confirm the phone was stolen before implicating Cruz in a theft.  Id.; see also Le Dep. 143-44.

Delta first learned of the phone theft when its employees alerted Delta to a local newscast on the police investigation.  Hammell Aff. Ex. FF ("Johnson Dep.") 46-47.  Bobby Johnson, then Delta's General Manager of Airport Customer Service, discussed the matter with William White,

3

Delta's Corporate Director of Customer Service and Johnson's immediate superior. Id. at 46-47.

On January 29, 2011, Johnson met with Le for an interview. At the end of the interview, Johnson created a typewritten summary in a "Q&A" format, which Le edited by hand. In his edits, Le did not identify from whom he had purchased the phone, writing only that he purchased it from "someone." Hammell Aff. Ex. K. Le also wrote a separate handwritten statement in which he again omitted the seller's identity and specifics of the sale. Id. Johnson suspended Le with pay pending the conclusion of Delta's investigation. Id. at Ex. L.

On January 31, 2011, Le confronted Cruz, and confirmed for himself that the phone was stolen. Hammell Aff. Exs. O, R. Le attempted to speak with Johnson regarding the confrontation, but Johnson and other Delta managers were in Atlanta, Georgia, for a series of meetings. Id. at Ex. R. From January 31 to February 8, Le attempted several times to contact Johnson, and Johnson's immediate superior White, by phone and text message. Le Dep. 166-67, 326-27; Hammell Aff. Ex. R. Le testified that he called White immediately after confronting Cruz and told White the truth about Cruz. See Le Dep. 180-81, 326-27. Both Johnson and White told Le to submit his information in writing, and neither discussed the matter in detail over the phone. See Hammell Aff. Ex. R. Le did not submit a written statement identifying Cruz at that time. See Pl.'s Opp. 11-12.

Delta then decided to terminate Le for possessing stolen property. Hammell Aff. Ex. M. On or about February 10, 2011, Johnson called Le and gave him the choice to resign or be discharged. Id. at Ex. R. Le refused to resign. That same day, Le called David Childers, his immediate supervisor at Delta, and told Childers he had purchased the phone from Cruz, who claimed to have found it on a baggage carousel. Id. at Ex. Q. Childers told Le to speak with

4

White, and that Childers would also speak with White himself.  Id.  Nevertheless, Delta issued its formal notice of termination the next day, on February 11.  Id. at Ex. N.

In a statement dated February 15, 2011, Le provided Delta with written information about Cruz for the first time.  Id. at Ex. O.  The statement summarized Le's transaction to purchase the phone, as well as his subsequent confrontation with Cruz.  Id.

On February 16, 2011, Le appealed his termination with Delta.  In a statement submitted with this appeal, Le explained that at the time he purchased the phone, Le had no indication Cruz had stolen the phone.  Id. at Ex. R.  Thus, Le did not know for certain the phone was stolen until his confrontation on January 31, 2011.  Id.  Nevertheless, Le conceded that he had not been forthcoming with either MSP police or Delta.  Id.

On March 14, 2011, Kelly Nabors, a Delta human resources employee, interviewed Le in connection with his appeal.  From this conversation, Delta confirmed that Le had withheld relevant information from MSP police and Delta.  Delta also observed that Le had written in his February 15 statement that he had immediately identified the stolen phone for police, but now told Nabors that he showed the police several phones, unsure which phone the police sought.  See id. at Ex. T.  Also, Le told Nabors he did not ask Cruz to return the money he paid for the iPhones, a statement which contradicted Cruz's statement and his statement to Childers on February 10.  See id. at Exs. Q, S, T.  The MSP police report, which Delta reviewed as part of the appeal, further confirmed the inconsistencies in Le's statements.  See id. at Ex. D.  On March 24, 2011, Delta denied Le's appeal.

On November 22, 2011, Le initiated this action in Hennepin County District Court.  Not. of Removal [Docket No. 1] Ex. 1 (Complaint).  Delta timely removed the action to federal court

on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). Not. of Removal. Le originally alleged two claims, the first for race and national origin discrimination under the MHRA, and the second for defamation. The parties have since stipulated to a dismissal of the defamation claim. Joint Stip. [Docket No. 20].

### III. DISCUSSION

**A. Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The United States Supreme Court, in construing Federal Rule 56(c), stated in Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134 (8th Cir. 1999). However, Plaintiffs alleging discrimination do not receive particular deference under the summary judgment standard; district courts do not "treat discrimination differently from other ultimate questions of fact." Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (citations omitted). In other words, there is no "discrimination case exception" to the standard for summary judgment. See id.

**B. MHRA Claim**

The MHRA (or the "Act") prohibits employers from discharging employees based on their membership in a protected class, including because of their race or national origin. Minn. Stat. § 363A.08, subd. 2. If a terminated employee pursues a civil action under the Act but does not provide direct evidence of discrimination, the reviewing court proceeds with a McDonnell Douglas analysis. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); see also Chock v. Nw. Airlines, Inc., 113 F.3d 861, 863 (8th Cir. 1997) (applying McDonnell Douglas to MHRA race discrimination claim), abrogated on other grounds by Torgerson, 643 F.3d at 1043.

The McDonnell Douglas framework involves three steps. First, the plaintiff must establish a prima facie discrimination. If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to provide a "legitimate, nondiscriminatory reason" for the adverse action. Pye v. Nu Aire, Inc., 641 F.3d 1011, 1019 (8th Cir. 2011). Finally, if the defendant meets this requirement, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretext for discrimination. Id.

**1. Prima Facie Case**

To establish a prima facie case of discrimination, the plaintiff must establish four elements. Namely, the plaintiff must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. See Riser v. Target Corp., 458 F.3d 817, 819-20 (8th Cir. 2006). The prima facie case requirements are flexible, and the plaintiff may satisfy the fourth element in more than one way. For instance, he may show

"more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by the decisionmaker." Pye, 641 F.3d at 1019 (citations omitted). The parties dispute whether Le has established the second and fourth elements of his prima facie case.

      **a. Legitimate expectations**

Delta argues Le did not meet legitimate expectations of his job because Delta expected him to be "entirely truthful and cooperative" during any company investigation. Def.'s Mem. Supp. Summ. J. [Docket No. 24] 28 ("Def.'s Supp."). Because Le was not forthcoming with information known to him during Delta's investigation, Delta argues, he failed to meet legitimate expectations. Le responds that Delta has misstated the second element of a prima facie case in the context of this case. Instead of showing he was meeting Delta's legitimate expectations, Le need only show he was objectively qualified for the job. See Arnold v. Nursing & Rehab. Ctr. at Good Shepherd LLC, 471 F.3d 843, 846 (8th Cir. 2006), abrogated on other grounds by Torgerson, 643 F.3d at 1043.

Le has satisfied the second element of his prima facie case. To demonstrate the second element of the prima facie case here, Le must only show that he "executed [his] duties satisfactorily." See id. (citing Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2nd Cir. 2001), cert. denied, 534 U.S. 951 (2001)). Setting aside the events or conduct giving rise to the suit, if Le was "otherwise qualified" for his position, he has satisfied the second element. Riley v. Lance, Inc., 518 F.3d 996, 1000 (8th Cir. 2008). Considering the alleged conduct giving rise to Le's termination as part of Le's prima facie case would improperly "collapse[] the prima facie case into the McDonnell Douglas framework." Id. at 1000. In this case, Le has established without dispute that he performed his job satisfactorily without major performance issues,

received regular raises, and received a promotion to Lead ESE. These facts satisfy the second element of Le's prima facie case. See id. (finding plaintiff qualified because he performed job "successfully for years").

### b. Inference of discrimination

The parties also dispute the fourth element of Le's prima facie case. Le argues he has established an inference of discrimination by showing he received less favorable treatment as compared to similarly-situated employees. To satisfy the fourth element of a prima facie case by comparing the plaintiff's treatment to others, the other employees must be "similarly situated in all relevant respects." See Chappell v. Bilco Co., 675 F.3d 1110, 1118-19 (8th Cir. 2012) (citing Meyers v. Ford Motor Co., 659 F.2d 91, 93 (8th Cir. 1981)). Of particular relevance are whether the comparators engaged in similar conduct and whether there was "any disparity in their discipline." See id. at 1119 (citation omitted). In Chappell, the court also considered whether the other employees were subject to the same policies at issue, worked in the same department, and how long they had worked for the employer. Id.

Le identifies two employees he argues received more favorable treatment than he did for comparable conduct. The first employee was videotaped stealing sunglasses while on duty. See Felt Aff. Ex. 11; Hammell Aff. Ex. Z. The second employee was involved in a fairly violent fight with another employee. Hammell Aff. Ex. X. Both employees are white males, both were working as ESE's for Delta at the time of their conduct, and the conduct occurred within about a year of Le's termination. See id. at Exs. X, Z. Delta also terminated both employees. Id. at Exs. V, Y. However, both employees appealed their terminations and Delta eventually reinstated them. Id. at Ex. W; Felt Aff. Ex. 22. Le argues Delta managers, including Johnson and White,

9

"went to bat" for these employees during their respective appeals in a way that no one did for Le. See Felt Aff. Ex. 13. In essence, Le argues that even if Delta justifiably terminated Le and these other two employees, it discriminated against Le during his appeal.

For the purposes of his prima facie case, Le has established an inference of discrimination. Le's identified comparators bear sufficient relevant similarities, including being subject to the same policies, performing similar jobs, and being supervised by the same managers. These employees also engaged in conduct comparable to Le's conduct. The other two employees ultimately received more favorable treatment by being reinstated to their positions. Le was not reinstated. As a result, Le has shown circumstances that could lend support to an inference of discrimination.

Delta argues at length against this conclusion, but its arguments are better considered at the pretext phase of the McDonnell Douglas analysis. As Chappell indicated, the Eighth Circuit Court of Appeals has issued two conflicting lines of cases regarding the threshold for similarly-situated employees at the prima facie stage. Chappell, 675 F.3d at 1118-19. Nevertheless, the test for similarly-situated employees is much more demanding at the pretext stage of the McDonnell Douglas framework. As a result, a closer analysis of the similarity of these employees is conducted below.

**2. Legitimate, Non-Discriminatory Reasons and Pretext**

Having found Le established a prima facie case of discrimination, the burden of production shifts to Delta to state a legitimate, non-discriminatory reason for Le's termination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). At this stage, the burden of persuasion continues to remain with the plaintiff; the court's review of a defendant's

stated reason for termination cannot involve any "credibility assessment." Id. at 142 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). The defendant has satisfied its burden if it states reasons, "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's, 509 U.S. at 507 (citation omitted).

If the defendant satisfies its burden of production, the presumption of discrimination created by the prima facie case "simply drops out of the picture." Id. at 510-11. At that point, the plaintiff "can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [the plaintiff's protected status] was a determinative factor in the adverse employment decision." Rothmeier v. Inv. Advisors, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996) (originally discussing age discrimination). Regardless of the plaintiff's arguments to establish pretext, the focus always remains on "whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's [protected status]." Id. Given the parties' interconnected arguments in this case, Delta's proffered reasons and Le's evidence of pretext are addressed together.

### a. Delta's proffered reasons

Delta splits its analysis of Le's discharge into two parts: his termination, and the denial of his subsequent appeal. Regarding his termination, Delta learned of Le's connection to the stolen phone through a media report and subsequent police investigation. Le admitted to possessing the stolen phone, but when asked by both the police and Delta about how the phone came into his possession, he offered only vague answers about buying the phone from "someone." Le argues

11

he later tried to tell Delta the truth after confronting Cruz, but Le did not send a written statement—as Delta requested of him—until after his termination. And, Le does not dispute that he had the ability to send a written statement at any time. See Le Dep. 168-69. Johnson also reviewed MSP police reports, which raised further doubts about Le's credibility and indicated Le may have stolen the phone. Given both Le's admitted possession of a passenger's stolen phone and the circumstances surrounding this possession, Delta decided to terminate Le.

During his appeal, Delta also concluded Le had been less than fully forthcoming and honest. After reviewing Le's statements and conducting a second interview, Delta learned Le had withheld key information from both the police and from Johnson during interviews and in Le's first, handwritten statement. Delta also identified the other discrepancies noted above, including Le's differing versions of how he identified the stolen phone for MSP police. Delta argues that these concerns justified denying Le's appeal.

Delta's stated reasons for Le's termination and the subsequent denial of his appeal satisfy Delta's burden of production, and Le offers no material rebuttal. As the Supreme Court has held, a stated reason for termination cannot be a pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's, 509 U.S. at 515 (emphasis original). In other words, it is not enough to "disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." Id. at 519 (emphasis original); see also Dixon v. Pulaski Cnty. Special Sch. Dist., 578 F.3d 862, 872-73 (8th Cir. 2009) (affirming summary judgment in part due to weak prima facie case and "limited probative value of [plaintiff's] evidence of falsity"), abrogated on other grounds by Torgerson, 643 F.3d at 1043.

In this case, Le has not demonstrated why a factfinder might reasonably disbelieve Delta. The parties differ in their phrasing: Le "lied" about where he bought the stolen phone; Le told the truth but "did not identify" the key person of interest. Def.'s Supp. 4; Pl.'s Opp. 1. In Delta's version, Le deliberately misled the officers as to the source of the stolen phone; in Le's version, he deliberately omitted critical information. In either case, Le displayed less than trustworthy and helpful conduct to both MSP police and Delta in connection with a workplace theft investigation. Nothing in Le's evidence or arguments escapes this conclusion.

Le also briefly argues Delta's stated reasons for terminating him have changed over time, which may also be evidence of pretext. See Pl.'s Opp. 27-28. But this is not a case in which the employer stated a series of implausible, potentially contradictory explanations for terminating an employee. See Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1024 (8th Cir. 1998). Nor is this a case in which Delta made a "substantial change" in position regarding its reasons for terminating Le. See E.E.O.C. v. Trans State Airlines, Inc., 462 F.3d 987, 995 (8th Cir. 2006). In this case, Delta terminated Le based on the information before it, including Le's admitted possession of a Delta passenger's stolen phone. This reason did not change on appeal, but Delta additionally concluded that while Le had not stolen the phone, he had been dishonest. Nowhere in the law or, as far as the Court is aware, in Delta's policies, is Delta prevented from considering new factual information as part of an internal appeal. Delta's reasoning process does not suggest pretext, in particular because Delta's stated reasons all logically relate to the same underlying conduct.

Finally, Le argued at the hearing, and mentions in his brief, that while he is comfortable with English as a second language in the workplace, he is less comfortable with legal

terminology, and thus was at a disadvantage during Delta's investigation. Pl.'s Opp. 4. Le expressed some confusion over terminology and questions during his deposition. See, e.g., Le Dep. 87-89. However, Le does not indicate how confusion over legal terms affected his conduct during the investigation of the stolen phone. Nor does Le argue there was any miscommunication during his termination and appeal process. On the contrary, Delta's investigation records and Le's own written statements and affidavit demonstrate that Le made a calculated decision to withhold key information. See Hammell Aff. Exs. D, G, J, K, O, R, T. Even setting aside the areas of possible confusion in Le's deposition, the record as a whole undisputedly establishes that Le was initially dishonest when confronted about the theft from his workplace.

### b. Similarly-situated employees

Le also attempts to establish a "reasonable inference of discrimination" by comparing his appeal to those of the two Delta employees discussed above. Young, 152 F.3d at 1024. The test for determining whether employees are similarly situated is a "rigorous" one. E.E.O.C. v. Kohler Co., 335 F.3d 766, 775 (8th Cir. 2003) (quotation omitted). The compared-to employees must be similar in all relevant respects, meaning that among other factors, they "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id.

The parties discuss the facts of the two comparators' situations at length. The first is a Delta employee of nearly 30 years who had some prior recorded instances of safety issues and misconduct. This employee stole a pair of sunglasses from an airport store. The store notified MSP police, who investigated and identified the employee, and then questioned him. Felt Aff.

Ex. 12.  As Le notes, it appears the employee did initially deny being in the relevant area.  See id. However, in the very next sentence of the same interview, MSP police noted that the employee then immediately confessed to being in the store and stealing the sunglasses.  Id.

In Delta's subsequent investigation, it learned the employee was struggling with substance abuse problems and previously-diagnosed depression.  Hammell Aff. Ex. Z.  The employee was also, apparently, deeply apologetic.  Felt Aff. Ex. 14.  As a result, White sent an email to several other Delta managers, asking them to "step[] up big time" in assisting the employee.  Id.  Delta's human resources department nevertheless terminated the employee.  Id. at Ex. 16.  Shortly afterwards, with White's and others' assistance, Delta agreed to allow the employee to return to work, provided he satisfied certain conditions including participation in a substance abuse program.  See Seppings Decl. [Docket No. 25] ¶ 9.[1]

The second comparator was involved in a physical altercation with another employee.  Afterward, the comparator employee stated—and several witnesses appear to have verified—that he did not actively attempt to cause injury.  Instead of trying to strike his opponent, he attempted to end the fight.  Hammell Aff. Ex. X.  Le argues that the first manager to review the situation noted important gaps in the employees' written statements.  For instance, the employee wrote he "gained control" of the other fight participant, but did not clarify until asked that he meant he had placed the other participant in a "headlock."  Felt Aff. Ex. 29.  When asked if he had

---

[1] Le asks the Court to strike the entire declaration of Melissa Seppings from the record because she was not subjected to cross-examination and because the declaration offers testimony that is inadmissible due to a lack of foundation or because it is hearsay.  Pl.'s Opp. 32-33.  The declaration is only tangentially relied upon, and the Court sees no reason to strike it in its entirety.  Le had an opportunity to depose Seppings.  Further, the facts considered by the Court in the declaration could be offered through admissible means at trial.  See Pink Supply Corp. v. Hiebert, Inc., 788 F.2d 1313, 1319 (8th Cir. 1986).

threatened the other participant, the employee said he could not recall but admitted that hostile words were exchanged.  Felt Aff. Ex. 29.

Delta terminated both fight participants.[2]   Again, White supported the employee during the appeal process.  White found the employee's upfront honesty, his defensive attempts to stop the fight, and his work record ultimately warranted reinstatement.  See Hammell Aff. Ex. W.  White also believed reinstating the employee would send a positive message to other employees about the appeals process.  See Felt Aff. Ex. 34.  The employee returned to work under a "Final Warning," meaning any infraction of company policy could lead to his immediate termination.  Hammell Aff. Ex. W.

As noted above, Le argues that the reinstatement of the two Caucasian employees and lack of reinstatement of Le is evidence of racial or national origin discrimination by Delta.  Le argues although these employees were both terminated, they had internal advocates who pushed for their reinstatement, while Le did not.

In response, Delta cites Twiggs v. Selig, 679 F.3d 990 (8th Cir. 2012).  In that case, two employees, one male and one female, deliberately withheld critical information during a meeting about the release of a juvenile from a treatment facility.  Id. at 991-92.  After the meeting, the male employee immediately confessed to withholding information while the female employee continued to claim ignorance for several months.  See id. at 992-93.  The female employee was

---

[2] The record indicates some "crosstalk" in terms of the comparator employee's termination.  At least one email indicates his termination was to be converted into a resignation.  Felt Aff. Ex. 32.  On the other hand, several communications, including the initial termination notice and appeal communications, indicate Delta terminated the employee.  Felt Aff. Exs. 34-35; Hammell Aff. Exs. V, W.  Le argues, in a footnote, that unlike this employee he was not offered the option to resign and then appeal.  Even assuming Le is correct, it is unclear how this distinction makes any material difference to this lawsuit.

fired while the male employee was not, and she brought a claim for gender discrimination under Title VII. See id. at 991-92. The Eighth Circuit held the employer's managerial staff were entitled to qualified immunity because no reasonable jury could find discrimination. See id. at 993-95. The court held that the two employees were not similarly situated because of a mitigating factor: the male employee immediately confessed the truth. See id. at 993-94. In this case, Delta argues, Le did not tell the truth while both comparators he identifies did.

The two employees Le identifies are not similarly situated. Although Le did not maintain a lie for a period of months as the plaintiff in Twiggs did, there is no genuine dispute that Le was dishonest to MSP police and to Delta in several instances. Even when viewing the evidence in the light most favorable to Le, he still did not attempt to tell the truth until several days after being questioned. He also chose not to submit a truthful written statement until after his termination. In the intervening time—and by his own admission—Le had taken the investigation into his own hands. Even if Le thought he was doing the honorable thing by withholding information, Delta was entitled to disagree. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995) (courts may not sit in judgment of employers as "super-personnel" departments).

In contrast, Le's comparators told the truth and fully cooperated with Delta from very close to the outset of their investigations. Both answered Delta's questions honestly and submitted written statements to the same effect. See, e.g., Felt Aff. Ex. 20. Le suggests these employees were less than truthful in their initial interviews, but he does not create any genuine issues of fact in this regard. The first employee was truthful about his actions during his first interview with MSP police; although he initially denied being in the relevant area, he

17

immediately admitted the theft in this initial interview. Similarly, the second employee admitted participating in the fight and gave a truthful account. When asked for clarification, he immediately provided it. While these employees are similar to Le in several regards, their forthrightness is a mitigating factor sufficient to distinguish them.

Delta also argues that both the alleged similarly situated employees had other mitigating factors. During its investigations of the two employees, Delta gathered additional information that, in Delta's view, lessened each employee's culpability. The employee who stole the pair of sunglasses had been struggling with substance abuse and mental health problems, and Delta only agreed to reinstate him on the condition that he begin treatment. Regarding the second employee, further review showed that this employee had only tried to protect himself and end the altercation. Delta's investigation also confirmed the employee had truthfully recounted the fight. Stated another way, Delta found information in its investigations of these two employees that, in its view, supported reinstatement. In Le's case, Delta found information that supported its initial termination decision. These mitigating factors further distinguish Le from his would-be comparators.

Le has offered no evidence to genuinely dispute Delta's reasons for terminating him. More importantly, Le has also failed to offer evidence showing that Delta's actual reason for terminating him was a racially or ethnically discriminatory motive. See St. Mary's, 509 U.S. at 519. Le worked for Northwest, and then Delta, with only minor disciplinary issues for 13 years, and he does not identify a single instance of discriminatory animus or mistreatment from that entire time. Le's sole attempt to create an inference of discrimination is in the two comparators he identifies, but each of these two employees had distinct circumstances that ultimately led to

18

their reinstatement.  Being fired in difficult, unfortunate, or even unfair circumstances does not by itself give rise to a claim of discrimination, and Le has not introduced evidence sufficient to create a question of fact as to whether Delta discriminated against him because of his race or national origin.  See Hutson, 63 F.3d at 781.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Delta's Motion for Summary Judgment [Docket No. 22] is **GRANTED**.

2. All claims in the Complaint [Docket No. 1-1] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 19, 2013.